FILED
2026 Sep-30 AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**HUGH D. MILLER, III,**
Plaintiff,

**v.**

**STATE FARM FIRE AND CASUALTY COMPANY, *et al.*,**
Defendants.

**Case No. 1:25-cv-1565-CLM**

# MEMORANDUM OPINION

In 2019, Plaintiff Hugh D. Miller III remodeled a house that he inherited from his grandfather. Miller asked Brandon Tate, owner of Brandon Tate Insurance Agency, Inc. ("Tate Insurance") and an agent of State Farm Fire and Casualty Company ("State Farm"), to procure an insurance policy for him that would cover the cost of replacing his house and personal property if the house was destroyed. Tate procured a State Farm policy for Miller.

When a fire destroyed the house, Miller discovered that the policy limit on his State Farm policy wouldn't cover the cost of rebuilding the house. So Miller sued State Farm, Tate Insurance, Brandon Tate, Select Portfolio Servicing, Inc., and Fictitious Parties A-D in Alabama state court. (Doc. 1-1). State Farm, Tate Insurance, and Tate removed the case based on diversity, (doc. 1), and Miller moves to remand, (doc. 13). For the reasons explained below, the court **GRANTS** Miller's motion to remand (doc. 13) and **REMANDS** this case for lack of jurisdiction.

## BACKGROUND

*1. The Property*[1]

In 2017, Miller inherited property located at 1415 Shannon Way, Talladega, Alabama (the "Property") from his grandfather. At the time, a 4,000 square foot home stood on the Property. Miller remodeled the home in 2019, keeping only the original foundation and building a new 14,950 square foot home on top of it.

After the remodel, Miller had the Property appraised at $1,800,000. Miller then refinanced the property and mortgaged the home with a $1,600,000 loan from Cornerstone Mortgage. Portfolio Servicing, Inc. serviced the loan.

Next, Miller sought to insure his new home. Miller contacted Brandon Tate, who owned Tate Insurance and served as an agent for State Farm. Miller told Tate to obtain coverage for the replacement cost of his home and its contents.

*2. The Appraisal & Policy*

A registered appraiser valued the home at $1,848,600. So Tate recommended that Miller purchase a policy that provided coverage of up to $1,848,600 on the home; $1,386,450 on the contents of the home; $184,860 for other structures; and $554,580 for loss of use up to 24 months. Miller purchased the homeowners insurance policy that Tate recommended. There was a $5,000 deductible for any loss claimed, and Miller paid monthly premiums of $1,226.83 to State Farm through the escrow account of his mortgage company.

Tate told Miller that the policy covered "replacement cost coverage and that he had performed the necessary steps to make sure the insurance

[1] Because Miller moves to remand, the court draws its facts from the complaint, (doc. 1-1), and views them in the light most favorable to Miller. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

coverage provided to [Miller] was sufficient to cover any loss [Miller] might suffer." (Doc. 1-1 at 11, ¶ 11).

*3. The Claim*

On August 12, 2024, a fire destroyed Miller's home and its contents and damaged the home's foundation, driveway, and retaining walls. Miller filed a claim for the losses under the policy. He provided "financial records, records related to the construction of the residence, records related to the financing of the construction of the property, records related to the purchase of personal property lost in the fire, [and] other business records" to State Farm. (*Id.* at 12, ¶ 15). Considering these records, a sworn statement under oath, and an interview with claims investigators, State Farm determined that Miller's claim was valid.

On February 9, 2025, State Farm offered Miller $1,005,925 for the home and $117,929 for his personal property. State Farm used software, which allows users to place limits on costs of construction, to estimate the cost of replacing Miller's home.[2]

Miller rejected State Farm's offer as insufficient and gathered his own estimates of the cost of replacing his home. First, an independent insurance adjusting firm estimated that the home would cost over $2 million to rebuild. Second, Peter Mackey, a local homebuilder, estimated that the home would cost over $2.2 million to rebuild. According to Mackey, State Farm's estimate of $100 per square foot was far too low; a rebuild would actually cost over $225 per square foot. Miller shared these estimates with State Farm and requested that State Farm pay him the policy limit.

On June 9, 2025, State Farm offered Miller $1,244,240.84 to cover the loss of his home, the "estimate less recoverable depreciation and deductible," and $142,710.35 to cover the loss of his property. (*Id.* at 15, ¶ 24). Miller again rejected the offer as insufficient.

---

[2] Miller refers to this software as "Xactware." State Farm clarifies that the software is Xactimate. (Doc. 1 at 16, n.2).

While the back and forth between State Farm and Miller continued, Miller made payments on the Property's mortgage but incurred late charges and interest. On July 31, 2025, Portfolio Servicing, Inc. notified Miller that "it was referring the mortgage arrearage matter for legal action," which Miller interpreted as foreclosure. (*Id.* at 16, ¶ 27).

*4. The Lawsuit*

Miller sued State Farm, Tate, and Tate Insurance on August 8, 2025, in the Circuit Court of Talladega County, Alabama. Miller pleaded six counts: (Count 1) Breach of Contract against State Farm; (Count 2) Negligence against Tate and Tate Insurance, individually and as agents for State Farm; (Count 3) Fraudulent Misrepresentation against Tate and Tate Insurance, individually and as agents for State Farm; (Count 4) Fraudulent Suppression against Tate and Tate Insurance, individually and as agents for State Farm; (Count 5) Bad Faith against State Farm; and (Count 6) Injunctive Relief and Motion to Stay Collection Action and Foreclosure against Select Portfolio Servicing, Inc. (Doc. 1-1).

State Farm, Tate, and Tate Insurance removed the case to this court, asserting diversity jurisdiction. State Farm is a foreign corporation that is incorporated and has its principal place of business in Illinois. Select Portfolio Servicing, Inc. is a foreign corporation that is incorporated and has its principal place of business in Utah. But like Miller, Tate and Tate Insurance are from Alabama: Tate is an individual domiciled in Alabama, and Tate Insurance is a corporation that is incorporated and has its principal place of business in Alabama.

The Tates' Alabama residency destroys diversity jurisdiction, except State Farm argues that Miller fraudulently joined Tate and Tate Insurance as defendants to defeat federal jurisdiction. Miller argues that Tate and Tate Insurance are proper defendants and thus asks the court to remand. (Doc. 13).

## STANDARD OF REVIEW

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe*, 113 F.3d at 1538 (citing *Cabalceta v. Standard Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).

The burden of establishing fraudulent joinder is a heavy one. If a plaintiff states even a colorable claim against the resident defendant, joinder is proper, and the case should be remanded to state court. *See id.*; *Cabalceta*, 883 F.2d at 1562. The determination of whether a resident defendant has been fraudulently joined must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts the parties submit. *Crowe*, 113 F.3d at 1538. In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor. *Id.*

## DISCUSSION

Applying the Eleventh Circuit's fraudulent joinder standard, the court must answer one question: Is there *any* possibility that a state court would find that Miller's complaint pleads at least one viable count against either resident defendant, Tate or Tate Insurance? If the answer is 'yes', diversity is destroyed and this court lacks jurisdiction.

Miller pleads three counts against Tate and Tate Insurance, individually and as agents for State Farm: (Count 2) Negligence; (Count 3) Fraudulent Misrepresentation; and (Count 4) Fraudulent Suppression. The court begins and ends its discussion with Count 2 because, based on the record before it, the court finds that there is a possibility that an Alabama state court judge would deny a motion to dismiss Count 2.

**A. Count 2, Negligence (Miller's case in chief)**

Miller pleads a negligence claim against Tate and Tate Insurance. Miller alleges that Tate and Tate Insurance "owed [him] a duty to procure insurance coverage as represented to [him]"; that they breached that duty by failing "to exercise reasonable skill, care, and diligence in effecting proper and sufficient insurance coverage"; and that this breach caused Miller's injuries—having to pay expenses that should've been covered by his insurance policy out of pocket. (Doc. 1-1 at 17-18, ¶¶ 35-37).

Defendants are correct that Miller pleads a negligent procurement of insurance claim. (Doc. 5 at 7). Under Alabama law,

> When an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom. Once the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage. When the agent or broker has failed in the duty he assumes, the principal may sue either for breach of the contract or, in tort, for breach of the duty imposed on the agent or broker.

*Cornett v. Johnson*, 578 So. 2d 1259, 1262-63 (Ala. 1991) (citation modified). An agent can breach their duty by failing to provide "the complete and adequate coverage desired by the insured." *Metro. Prop. & Cas. Ins. Co. v. Butler*, 2016 WL 2939633, at *6 (N.D. Ala. May 20, 2016).

Viewed in the light most favorable to Miller, Miller has pleaded a colorable negligent procurement of insurance claim against Tate and Tate Insurance. Miller told Tate that he wanted a policy that would cover the cost of rebuilding his home if it was completely destroyed.[3] Tate

[3] Miller refers to this as the "replacement cost" of the home, which is a technical term included in the insurance policy from State Farm. But Miller uses the term colloquially,

recommended a policy that covered up to $1.8 million in replacement costs based on the value listed in the appraisal. In doing so, Tate assured Miller that the policy "was sufficient to cover any loss [Miller] might suffer." (Doc. 1-1 at 11, ¶ 11). As a result, Miller believed that he was purchasing a policy that would cover the full cost of rebuilding his home if it was completely destroyed.

But the policy's limits didn't meet the actual cost to rebuild Miller's home. Instead, Miller pleads that two sources provided estimates that the cost to rebuild the home would be over $2 million. Though Defendants have provided the relevant policy from State Farm and emphasize that Miller's home's "replacement costs" were included in the policy, the policy doesn't address the substance of Miller's claim—that the policy limit that Tate secured for him, which he promised would cover the cost of rebuilding the home, was too low to actually do so. And though Miller accepted an insurance policy with a limit of $1,848,600, Miller pleads that he did so with the assurance from Tate that this amount was sufficient to compensate him for "any loss."

Viewing the facts in a light most favorable to Miller, a state court could find that Tate failed to act with reasonable skill, care, and diligence when he recommended to Miller a policy that wouldn't cover the total loss of Miller's home. Whether the facts bear this out, of course, is a question for another day (in another court). For now, the court simply holds that Count 2 might survive a state-court Rule 12 motion because "the coverage obtained was not the coverage requested." *Sudduth v. Equitable Life Assur. Soc'y*, 2007 WL 2460758, at *6 (S.D. Ala. Aug. 27, 2007).

---

simply referring to the cost of rebuilding the home in the event of complete destruction. For clarity, the court will refer to this as the cost of rebuilding the home.

**B. Count 2, Negligence (affirmative defenses)**

Defendants argue that, even if Miller pleaded a viable claim against Tate or Tate Insurance, Miller's contributory negligence bars recovery because Miller agreed to the policy that he now challenges. (Doc. 14 at 5).

Defendants are correct that contributory negligence is a complete defense to a negligent procurement of insurance claim in Alabama. *Alfa Life Ins. Corp. v. Colza*, 159 So.3d 1240, 1248 (Ala. 2014). To prevail on a contributory negligence defense as a matter of law, the facts must be "such that all reasonable persons must reach the same conclusion"—"that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Id.* at 1249. To prevail on this affirmative defense in a dispositive motion, a defendant must "establish by undisputed evidence a plaintiff's conscious appreciation of danger." *Id.*

Defendants fail to establish by undisputed evidence that Miller consciously appreciated the danger here. The only evidence Defendants provide are State Farm documents related to the insurance policy itself. (*See* Doc. 1-2). But the heart of Miller's negligence claims—that the $1.8 million limit was insufficient to cover the cost of rebuilding the house in the event of its destruction—was not evident from the policy. As discussed above, the fact that the insurance policy says that the "replacement costs" State Farm would pay would not exceed the coverage limit listed on the policy's declarations page fails to adequately address Miller's claim that Tate recommended an insufficient policy, and that negligence harmed Miller. That Miller's policy limit was listed as $1.8 million told Miller nothing about whether $1.8 million would be enough to cover the costs of rebuilding his home. And Miller (as master of the complaint) has pleaded no facts that would put him on notice, thereby sinking his own claim.

The court thus finds that Defendants fail to sufficiently show that Miller consciously appreciated that the policy Tate recommended would be deficient. As a result, the court finds a strong likelihood that a state

court would deny Defendants' Rule 12 motion on contributory negligence grounds, if they filed one.

---

In sum, the court finds that there is a possibility that a state court would deny a motion to dismiss Miller's negligence claims against Tate and Tate Insurance. *See Crowe*, 113 F.3d at 1538. Accordingly, Miller properly pleaded Tate and Tate Insurance as defendants, destroying this court's purported diversity jurisdiction.

## CONCLUSION

For these reasons, the court finds that Miller did not fraudulently join Tate and Tate Insurance. Diversity is therefore lacking, taking the court's subject matter jurisdiction with it. So the court will **GRANT** Miller's motion to remand this case to the Circuit Court of Talladega County, Alabama (doc. 13). The court also **TERMINATES AS MOOT** the motions to dismiss filed by State Farm (doc. 4) and Tate Insurance (doc. 5). The court will enter a separate order that carries out this ruling.

**DONE** and **ORDERED** on September 30, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE